UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DARWIN DAVELL PAGE,

               Plaintiff,                Case No. 2:22-cv-49

v.                                 Honorable Maarten Vermaat

UNKNOWN BLEMKE et al.,

               Defendants.

_____/

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

    This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

    "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Trotter and Blemke. The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's claims for declaratory and injunctive relief; (2) Plaintiff's Sixth Amendment claims; (3) Plaintiff's Seventh Amendment claims; (4) Plaintiff's claims for violation of amendments to the Michigan Constitution; (5) Plaintiff's Fourteenth Amendment procedural due process claims; and (6) Plaintiff's First Amendment retaliation claim.

Plaintiff's Fourteenth Amendment substantive due process claims against Defendants Limmerman and McKinney remain in the case.

The Court will also deny Plaintiff's motion to expedite. (ECF No. 6.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Lieutenant Unknown Trotter, Sergeant Unknown Blemke, and Officers Unknown Limmerman[2] and Unknown McKinney.

In his complaint and affidavit attached thereto, Plaintiff alleges that on June 24, 2020, he moved into C-Unit at URF. (ECF No. 1-2, PageID.9.) Because of medical issues, Plaintiff "relinquished [his] position as a tailor in the Michigan State Industry Garment Factory, and took a position as unit porter." (*Id.*) Plaintiff was responsible for cleaning the television room and the hallway near his cubicle. (*Id.*)

Defendants Limmerman and McKinney were Plaintiff's first shift supervisors. (*Id.*) Plaintiff alleges that they "made it known that they didn't like [him] because [he] refuse[d] to acknowledge their racial affronts towards [him]; they would harass [him] at every opportunity." (*Id.*) By November of 2020, Plaintiff "had been placed on excessive days of top-lock due to misconducts written by [Defendants] McKinney and Limmerman." (*Id.*) For example, Plaintiff contends that on one day, Defendants McKinney and Limmerman each issued a Class II misconduct for being out of place. (*Id.*) Plaintiff contends that he was not out of place because he was performing his job duties each time. (*Id.*) Defendant McKinney also issued a misconduct for being out of place when Plaintiff was standing in the hallway talking to the unit counselor. (*Id.*)

---

[2] Plaintiff names Defendant "Lemmerman" in the caption of his complaint but refers to "Limmerman" throughout the body. The Court, therefore, adopts "Limmerman" as the proper spelling of this Defendant's name.

4

Defendant Limmerman told Plaintiff "that was just the beginning." (*Id.*) Plaintiff "was placed on room restriction from 8am-4pm where [he] continued to be harassed by [Defendants] Limmerman and McKinney." (*Id.*)

On May 4, 2021, Plaintiff was helping another inmate "with legal work at a table in the quiet room." (*Id.*) Defendant McKinney walked by and said, "we got a black Matlock in the unit." (*Id.*) Plaintiff stated that he took offense to the "racially bigoted remark, and [he] asked [Defendant McKinney] to please not include [him] in his wisecracks." (*Id.*) Plaintiff later tried to make a call, and Defendant Limmerman "snarled" at him while he waited for the call to go through. (*Id.*) When Plaintiff got off the phone, Defendant Limmerman stated, "mommy can't help." (*Id.*) Plaintiff "informed him that [his] mother was murdered when [he] was 14 years old, of course she can't help." (*Id.*)

That same day, after lunch time, Plaintiff returned to the unit and found that his "area of control had been ransacked by one or both of Limmerman and McKinney." (*Id.*) An inmate across the hall told Plaintiff that both Defendants had been in Plaintiff's area "the whole time that they were in [his] cube." (*Id.*) Plaintiff found a rusty razor blade under his pillow. (*Id.*) He showed it to the inmate, then "snapped it in half and flushed it down the toilet." (*Id.*, PageID.10.) Plaintiff passed Defendant McKinney, who stated, "you think [you] got away," as he returned from the bathroom. (*Id.*) "Out of fear [Plaintiff] waited until second shift and went to report the issue to the unit prisoner counselor for C-Unit." (*Id.*) The counselor stated, "you should've brought the razor to me, now you have no proof . . . besides I am a prisoner's counselor and no longer their supervisor." (*Id.*)

The next morning, Plaintiff woke up at 5:00 a.m. to prepare for his pre-insulin meal at 5:45 a.m. (*Id.*) Defendants McKinney and Limmerman entered the unit to begin their shift. (*Id.*) Plaintiff

had not "slept much at all the night before because [he] was warned by other inmate about prisoners getting framed/set-up by co-workers of staff who have a conflict with them." (*Id.*)

Defendant McKinney made rounds and announced that there would be room inspections that day. (*Id.*) Plaintiff went to the bathroom to wash a dish, then returned to his cube. (*Id.*) His cellmate informed him that Defendant Limmerman had been in Plaintiff's area again. (*Id.*) Plaintiff searched his bed and television stand and found "another, newer razor blade tucked neatly between [his] pillow and blanket." (*Id.*) Plaintiff used JPay to write a letter about the incident to send to 15 people, including his lawyer. (*Id.*) He also called Lachelle Payne and told her everything that had happened. (*Id.*) He noted that he "was turning the razor blade in to shift command after [he] went to insulin lines." (*Id.*) Plaintiff indicated that "they would probably put [him] in the hole and stick it on [him]." (*Id.*)

As soon as Plaintiff headed for the door to go to insulin lines, Defendant Limmerman stated, "Time to make my rounds see what I find." (*Id.*) Plaintiff had placed the razor blade in a folded piece of paper. (*Id.*) He went to the annex for his insulin. (*Id.*) Afterwards, Plaintiff stopped by the officers' window and asked to see shift command. (*Id.*) Defendant Trotter asked him what the problem was. (*Id.*) Plaintiff told him about the issues with Defendants McKinney and Limmerman and asked for protective custody from them. (*Id.*) Defendant Blemke stepped up to the window and asked, "why would you say that staff is trying to set you up?" (*Id.*) Plaintiff explained about the first razor blade, and Defendant Blemke responded that Plaintiff should have turned it in for proof. (*Id.*) Plaintiff presented the second razor blade in the folded paper. (*Id.*) Defendant Blemke asked what was in the paper. (*Id.*) Plaintiff told him, and Defendant Blemke unfolded the paper to find the razor blade. (*Id.*) Plaintiff told him that it should be dusted for fingerprints because his were not on there. (*Id.*)

Defendants Blemke and Trotter, as well as Sergeants Morse and Marshall (not parties) "talked for about an hour debating about whether [Plaintiff] did the right thing by turning in the blade." (*Id.*) Defendant Blemke exclaimed, "F***! [B]ut that's Limmerman and McKinney!" (*Id.*) A few minutes later, Plaintiff was "handcuffed and read a possession of a weapons misconduct class I charge." (*Id.*) He was escorted to segregation and asked if he wanted a hearings investigator, "after being re-interviewed 3 times due to mistakes on [the] ticket." (*Id.*) Defendant Blemke's misconduct report specifically advised that Plaintiff contended that he was set up by staff.

Defendant Blemke stated that they "will be sure this ticket sticks." (*Id.*) Plaintiff alleges that he gave the hearings investigator "the time for when [he] wrote the 15 letters/copy and the name and phone number [he] called to make the complaint." (*Id.*) The hearings officer told Plaintiff that his evidence was "irrelevant and he didn't believe [Plaintiff's] story." (*Id.*) Plaintiff "was given an additional 10 days['] segregation and housed in a suicide watch cell with bodily fluids and fees and dried pepper spray on the walls and windows." (*Id.*, PageID.10–11) He contends that officers would not allow him to clean the room or open the window. (*Id.*, PageID.11) Plaintiff had to be taken out of the cell "several times in a diabetic episode because of [his] inability to eat in that cell." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his rights under the First, Sixth, Seventh, and Fourteenth Amendments to the United States Constitution, as well as his rights under the Thirteenth, Sixteenth, Seventeenth, Nineteenth, and Twenty-Fourth Amendments to the Michigan Constitution. (ECF No. 1, PageID.4.) Plaintiff seeks declaratory and injunctive relief, as well as damages. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Claims for Declaratory and Injunctive Relief

As noted above, Plaintiff seeks declaratory and injunctive relief against Defendants. Plaintiff, however, is no longer confined at URF. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff is now confined at MRF, and Defendants are not employed at that facility. His claims for declaratory and injunctive relief will, therefore, be dismissed as moot.

### B.     Sixth Amendment Claims

Plaintiff vaguely mentions violations of the Sixth Amendment, which states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The guarantees of the Sixth Amendment, however, are applicable only to "criminal prosecutions," *Kirby v. Illinois*, 406 U.S. 682, 690 (1972), and "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Plaintiff's Sixth Amendment claims will, therefore, be dismissed.

### C.     Seventh Amendment Claims

Plaintiff also vaguely mentions violations of the Seventh Amendment, which provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried to a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. Presumably, Plaintiff mentions the Seventh Amendment to assert his wish for a jury trial in

this matter. Plaintiff does not describe, and the Court does not discern, how Defendants allegedly

violated this right. Any purported Seventh Amendment claims will, therefore, be dismissed.

###  D.   Claims for Violations of Numbered Amendments to the Michigan Constitution of 1963

Plaintiff also complains that Defendants' conduct violated "the 13th, 16th, 17th, 19th, and

24th Amendments to the Michigan Constitution." (Compl., ECF No. 1, PageID.4.) Although the

Michigan Constitution can be amended, and has been amended dozens of times, the amendments

are not numbered as the amendments to the United Constitution are. Instead, the text of the

constitution is changed. There are no amendments known by the number designations Plaintiff

cites. Accordingly, Plaintiff's partial sentence stating that Defendants have violated numbered

amendments to the Michigan Constitution fails to state a claim.

###  E.   Claims Against Defendant Trotter

In the affidavit attached to his complaint, Plaintiff alleges that on May 5, 2021, he went to

the officers' window and asked to see shift command after getting his insulin. (ECF No. 1-2,

PageID.10.) Defendant Trotter asked Plaintiff what the issue was, and Plaintiff told him about

"everything that had happened, then [he] requested protective custody from [Defendants]

Limmerman and McKinney." (*Id.*) Plaintiff alleges that Defendants Blemke and Trotter and

Sergeants Morse and Marshall "talked for about an hour debating about whether [he] did the right

thing by turning in the blade." (*Id.*) Ultimately, however, Defendant Blemke issued Plaintiff the

major misconduct for possession of a weapon. (*Id.*)

A claimed constitutional violation must be based upon active unconstitutional behavior.

*Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th

Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based

upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*,

368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff has not alleged any facts suggesting that Defendant Trotter personally engaged in unconstitutional behavior. Indeed, Plaintiff does not appear to allege any constitutional claims against Defendant Trotter in his complaint. (ECF No. 1.) Any purported claims against Defendant Trotter will, therefore, be dismissed.

### F.     Fourteenth Amendment Due Process Claims

#### 1.     Procedural Due Process

Plaintiff contends that his due process rights under the Fourteenth Amendment were violated when Defendant Blemke "present[ed] perjured evidence to alter material facts favorable to this Plaintiff." (ECF No. 1, PageID.3.) Plaintiff also suggests that the hearings investigator refused to investigate Plaintiff's claim as requested and that the hearings officer found him guilty "without previewing his claims of staff corruption or the recorded phone conversations and JPay messages." (*Id.*, PageID.2.) Plaintiff, however, has not named the hearings investigator and officer as defendants in this matter. In any event, he fails to state a plausible procedural due process claim for the reasons set forth below.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or

11

property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every

conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Here, Plaintiff was found guilty of a Class I misconduct for possession of a weapon. (ECF No. 1-3, PageID.14.) Under MDOC Policy Directive 03.03.105, ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id.* ¶ AAAA. Plaintiff, however, cannot allege that this major misconduct conviction resulted in any loss of good time credits. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted for crimes occurring after April 1, 1987.[4] In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Building on these rulings, in *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time,[5] a misconduct citation in

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

[4] Plaintiff is serving a life sentence imposed on June 29, 1993, for second-degree murder. *See* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=231855 (last visited Apr. 18, 2022).

[5] For some crimes committed after December 15, 1998, and all crimes committed after December 15, 2000, Michigan prisoners are "penalized" with "disciplinary time" under a statute that abolished the disciplinary credit system. Mich. Comp. Laws § 800.34.

the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. *See also Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *report and recommendation adopted*, 2011 WL 5491196 (E.D. Mich. Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on a loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

As to the second category set forth in *Sandin*, the misconduct hearing report indicates that Plaintiff received 10 days' segregation as a sanction. (ECF No. 1-3, PageID.14.) Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (concluding that two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460

14

(6th Cir. 1997) (finding that one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (holding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in segregation for 10 days is less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant. Moreover, the sanction imposed on Plaintiff was far less significant than the lengthy periods of segregation in *Mackey* and *Jones*, which did not implicate a liberty interest. Thus, Plaintiff's confinement in segregation did not trigger a right to due process.

Plaintiff's Fourteenth Amendment procedural due process claims will, therefore, be dismissed.

### 2.      Substantive Due Process

Plaintiff may be asserting substantive due process claims premised upon the planting of the razor blades by Defendants Limmerman and McKinney. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. &*

*Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007). Here, Plaintiff has alleged that on two occasions, Defendants Limmerman and McKinney planted razor blades in Plaintiff's area of control to frame him. Plaintiff alleges that on each occasion, another inmate informed him that Defendants Limmerman and McKinney had been in Plaintiff's area of control right before Plaintiff located the razor blades.

Given these allegations, the Court concludes that Plaintiff has alleged plausible substantive due process claims against Defendants Limmerman and McKinney.

### G. First Amendment Retaliation Claims

Plaintiff contends that Defendant Blemke retaliated against him for complaining about Defendants Limmerman and McKinney by issuing him a major misconduct ticket for possession of a weapon. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (quoting *Pearson*, 471 F.3d at 741) (finding that a conversation constituted protected petitioning activity). Here, Plaintiff has alleged that he engaged in protected conduct by orally grieving Defendant Limmerman and McKinney's alleged acts of twice planting razor blades in his area of control.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not

show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff has adequately alleged adverse action on the part of Blemke because he wrote a misconduct against Plaintiff for possession of a weapon. The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[ ] an adverse action"); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation.").

Plaintiff's retaliation allegations fall short, however, at the third step of the *Thaddeus-X* analysis. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (concluding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation in this action.

The hurdle that Plaintiff must overcome with respect to the third element is the truth of the misconduct report. Possession of a weapon is a legitimate Class I misconduct violation. *See* MDOC Policy Directive 03.03.105, Attach. A (eff. July 1, 2018). The definition of the offense does not include any intent element when the "weapon" possessed is "any hard material which could be used as a weapon or in the creation of a weapon." *Id*. It is beyond dispute that a razor blade would qualify as a weapon. And Plaintiff's allegations acknowledge that he possessed a razor blade, although he contends his possession carried no intention to harm. Conduct that violates a legitimate prison regulation is not protected under the First Amendment—or any other amendment. *See Thaddeus-X*, 175 F.3d at 395; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (finding that insolence is not protected conduct). Thus, Plaintiff's allegations support the inference that Defendant Blemke wrote the "possession of a weapon" misconduct because Plaintiff actually possessed a weapon, not because he complained about Limmerman and McKinney.

But the two motivations are not mutually exclusive. It is difficult—but not impossible—to allege facts to support an inference that a misconduct report is motivated by retaliation for protected conduct even when the misconduct report is true. The Sixth Circuit, in *Thomas v. Eby*, concluded that a plaintiff need not demonstrate that the misconduct proceeding terminated in his favor, in order to state a claim that he was issued a retaliatory misconduct. *Thomas*, 481 F.3d at 441–42. Instead, the court reasoned, the issue of retaliatory motive on the causation prong was to be analyzed under the standard of *Mt. Healthy*, 429 U.S. at 274, where, if a plaintiff has shown that his protected conduct was a motivating factor, the defendant may show that it would have taken the same action, regardless of the protected activity. *Thomas*, 481 F.3d at 441 (citing *Thaddeus-X*, 175 F.3d at 399 (holding that the *Mt. Healthy* standard applies to retaliation claims)). The court discussed two ways that a plaintiff could show that the misconduct was retaliatory even

if the plaintiff was guilty of the misconduct. *Id.* at 441–42. Specifically, the court mentioned that a prisoner might argue that other prisoners regularly violated the particular rule, but were never issued misconduct charges. Alternatively, he might argue that the particular defendant had never cited him for the conduct in the past, only issuing a misconduct once the prisoner had filed a grievance.

The *Thomas* court further concluded that the mere possibility of the two exceptional circumstances foreclosed dismissal under the Rule 12(b)(6) standard. *Id.* at 442 ("A complaint cannot be dismissed unless 'the plaintiff can prove *no set of facts*' that would entitle him to relief.") That aspect of the *Thomas* decision on the dismissal standard, however, preceded *Twombly* and *Iqbal*. The Court concludes that the *Twombly/Iqbal* standard alters the analysis such that the mere possibility that a "set of facts" exists that might support a viable claim does not preclude this court from dismissing under the 12(b)(6) standard.

Considering Plaintiff's allegations, the Court concludes that Plaintiff has not alleged facts that support the inference that either exceptional circumstance exists here. He does not allege that other prisoners regularly violated the possession of a weapon rule, but were never issued misconduct charges, nor does he allege that Defendant Blemke's course of conduct changed with respect to Plaintiff only after a grievance was filed. Accordingly, Plaintiff has failed to allege facts that support an inference that Defendant Blemke's accurate misconduct report was retaliatory and Plaintiff's conclusory statement of retaliatory motive does not, standing alone, suffice to state a claim. The Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Blemke.

## III.    Motion to Expedite

Plaintiff has filed a motion to expedite this case. (ECF No. 6.) In his motion to expedite, Plaintiff indicates that he is scheduled to see the Parole Board on July 11, 2022. (*Id.*, PageID.45.)

Plaintiff seeks an expedited ruling so that, if he obtains relief, the Parole Board can be notified to not use the misconduct at issue above against him. (*Id.*, PageID.46.) Because the Court has conducted its preliminary review of Plaintiff's complaint, Plaintiff's motion will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Trotter and Blemke will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's claims for declaratory and injunctive relief; (2) Plaintiff's Sixth Amendment claims; (3) Plaintiff's Seventh Amendment claims; (4) Plaintiff's claims for violation of amendments to the Michigan Constitution; (5) Plaintiff's Fourteenth Amendment procedural due process claims; and (6) Plaintiff's First Amendment retaliation claim.

Plaintiff's Fourteenth Amendment substantive due process claims against Defendants Limmerman and McKinney remain in the case.

The Court will also deny Plaintiff's motion to expedite. (ECF No. 6.)

An order consistent with this opinion will be entered.

Dated:    May 12, 2022                            /s/ *Maarten Vermaat*

                                              Maarten Vermaat
                                              United States Magistrate Judge